The next case up for argument is number 19-297, Cherry v. Garland. Ms. Javed Good morning, Your Honour, and may it please the Court. My name is Roma Javed and I represent the petitioner, Lixin Cherry. Your Honours, whether this case is reviewed de novo for legal error or under the Substantial Evidence Standard for factual error, reamend is required for two reasons. First, the agency committed reversible legal error by mischaracterizing Mr. Cherry's argument for cat protection as a simple claim that he would be denied medical treatment and would face harsh prison conditions, which the agency concluded would not be torture within the meaning of the cat. But Mr. Cherry never argued that a lack of medical treatment and harsh prison conditions are torture. Rather, he argued that his particular circumstances would lead to his incarceration, where he would be singled out for mistreatment, rising to the level of torture. This Court has acknowledged in Pierre that such a claim, if proven, would warrant cat protection. By analyzing only a seriously reduced and mischaracterized claim for relief, the agency here committed legal error requiring reamend. Second, if this Court proceeds to substantial evidence review, then the sole response of factual finding before this Court is found on AR 45, and that states that the respondent did not establish that his mental health would go untreated due to a lack of access to medication. That factual finding cannot survive substantial evidence. Could I just go back for a moment, Ms. Javed, to the legal error claim? I'm having trouble understanding how you can say that. The immigration judge on page 18 specifically references the claim that's not just, I'll be routinely tortured, I'll be subjected to harsh prison conditions, but says the Court also finds the respondent is stringing together a series of suppositions, in that he would be indefinitely detained upon return to Haiti, and that he would be required to revert to criminal activity. In other words, exactly the argument that you're saying was ignored. And then the BIA, on page 3 of the special appendix, page 2 of its opinion, specifically responds to the argument that the immigration judge ignored that chain of suppositions, and says, the respondent argues that the immigration judge did not adequately consider whether he established each fact in the chain of events, that if he is removed, he is unlikely to find work and pay for shelter because of discrimination, that his mental health will go untreated, et cetera, et cetera, and says, no, we think, rightly or wrongly, I guess this is the argument you're going to get to, that he didn't establish that each of those things is likely to occur. So I'm just, what am I missing about the argument that there is a legal claim that the agency ignored this very argument? Your Honor, Mr. Sherry agrees that the agency stated the correct series of suppositions that he set forth before the IJ. The legal error here is that the agency's responsive factual findings were insufficient. Were insufficient. So really, this is an argument, and you know, there's a question, I suppose, as to whether we have jurisdiction to consider that, and then there's an issue about whether it passes the substantial evidence test. But isn't that really what you're saying, is that there's no substantial evidence to support the rejection of this theory, not that it was ignored by anyone? Your Honor, the factual finding that Your Honor is referring to is unsupported by the setting forth. Okay. Okay, well, you were about to get to that anyway. I just wanted to make sure I understood that it wasn't missing something about the former argument. No, Your Honor. However, Mr. Sherry argues that that factual error is a direct result of the agency's bigger legal error, and that legal error was a mischaracterization of his claim for relief. Mr. Sherry set forth a detailed chain of events. The first step being that he would arrive in Haiti as a mentally ill criminal deportee. The second, that he would not receive mental health treatment. The third, that if he's not already in prison as a criminal deportee, his mental health, lack of support, homeless, would lead to him being homeless, unemployed, and attract the attention of police. And it is there that, by police or prison guards, he would be subject to torture. Okay, and Ms. Jevon, do you agree, or am I missing something here, that the burden is on you to establish each of those links? If any of those links is not supported by some evidence, then the whole thing falls to pieces. Agreed, Your Honor. Okay. The agency here was required to properly address at least one— At least one? At least one link in the chain of events. Okay, understood. Thank you. And Respondent argues that they did do so. However, the sole responsive factual finding here cannot stand for two reasons. The first is that it is entirely unsupported by the record evidence. The IJ nor the BIA does not cite to any record evidence to support the contention that Mr. Sherry did not prove that he would be unable to access his treatment in Haiti. And secondly, Your Honor, that factual finding does not address a full link in the chain. Mr. Sherry argued at his merits hearing, and Dr. Peter Martin, expert witness, testified on AR-173 that due to the severity and length of his severe PTSD, Mr. Sherry requires not only medicine but extensive psychotherapy as well, and the agency touched only on medication. I will point the Court to some sites in the record which illustrate that the IJ's factual finding on that point is unsupported by the record. Starting at AR—starting at the Human Rights Report on AR-442, or actually AR-386, it states that access to quality medical care is a significant challenge for the disabled in Haiti. At AR-470, there are interviews with deportees discussing their—the plight of the mentally ill when they are deported to Haiti. AR-442, a psychiatric article noting the lack of medication to treat mental illness in Haiti, and AR-407, a 2016 article from a journal stating that there were 0.07 psychiatrists working in mental health in Haiti per 100,000 people. Is that—I mean, is the absence of medication what the agency focused on? Again, I read the immigration judge at page 18 as focusing on—saying that the Court is not persuaded of the claim—of the chain of suppositions, including the claim that he would be potentially indefinitely detained as a deportee, and that's what was found not to be present, the very first link in the chain. And the BIA then focused on the lack of specific intent to torture as an issue, so that if he were unable to obtain his medications, that would not be in itself something that was intentional, and that there was no evidence that he would then be tortured intentionally. So aren't those the things you'd have to focus on to show why there is sufficient evidence that he would be detained, and sufficient evidence that there would be some intentional torture at some point in this chain? Your Honor, we do argue that the record supports Mr. Sherry's cat claim, and he does warrant cat protection under the record that he has submitted. The record shows that the mentally ill are tortured in Haitian prisons, and—not that all Haitians are tortured in prisons, but that someone in Mr. Sherry's particular circumstances would be likely to— And could you refer me to what that evidence is? Just where would I find that in the record? Sure, Your Honor. So the record demonstrates this in many instances. I will start with the Human Rights Report again. Many instances of—I'm sorry, it sometimes gets a little muffled with all of us with masks. Could you repeat that, please? Yes, Your Honor. There are many instances that demonstrate the torture that Mr. Sherry would face if he was removed to Haiti. I'm not sure I understand where those instances are. I would ask you to expand on your answer to Judge Lynch's question. Sure, Your Honor. So Mr. Sherry's particular circumstances would cause him to be singled out and tortured in Haitian prison. Mr. Sherry would be returning to a tiny, overcrowded Haitian prison cell. Are you talking about the experiences he had when he was last in Haiti? That is—that plays into his particular history, because— Because I'm not sure how those can inform a decision here or support you here, given that it was a different administration, different circumstances, which have been found to be changed now. Correct. So I, too, am concerned about where I look for evidence that he would likely be subjected to treatment that would qualify as torture, and that that treatment would be imposed with the specific intent to inflict serious injury amounting to torture. Your Honor, I would point you to AR-177 to 178. AR-177? 7 to 178. Dr. Peter Martin testifies what Mr. Sherry's behavior looks like when he is untreated and what it could look like. And that worsening of his behavior, as described in his report— Well, that's what would get him landing—that's what could get him in jail, right? Correct, Your Honor. All right. Now, assuming he's in jail, what's the basis—what's the evidence that supports the likelihood of intentional torture? Your Honor, the record shows at AR-386, persons with mental illness are marginalized, neglected, and abused in society. Detainees and prisoners— Well, that's not enough, right? It's not enough, Your Honor. Okay, so what—go further, I'm sorry. It's Mr. Sherry's particular circumstances, the way in which he would behave, returning to the source of his PTSD, which Dr. Peter Martin testified to, that would cause him to be singled out due to the rampant abuse, discrimination, marginalization of the mentally ill in Haiti. The detainees at AR-369 to AR-370—detainees are subject to cruel, inhuman, degrading treatment, being placed in overcrowded, poorly maintained, unsanitary, and makeshift detention centers. AR-370—most detention facilities only have basic clinics and lack medication for treatment of illnesses contracted while in society. But that wouldn't be torture, right? What you just read now, that they lack medication, that wouldn't be torture. That alone, Your Honor, would not be torture. However, Mr. Sherry, the way that he would behave specifically would cause him to be singled out for torture. And as I was saying earlier, Your Honor, Dr. Peter Martin described that Mr. Sherry, when he is unmedicated, he knows that he must stay alone to prevent himself from lashing out at others, and that's found at AR-306. He experiences vivid flashbacks where he starts hitting things. He acts inappropriately. He becomes noncommunicative, shakes his head, has anxiety, and avoids other people. And this is the behavior that he would exhibit if he were to remain untreated. I see I'm out of time, Your Honor. May I just briefly wrap up? Go ahead. Yeah, this is the behavior that he would exhibit that would cause prison guards, prison officials to single him out for torture, in conjunction with the bigger record here, which illustrates how poorly and how badly abused, mentally ill are in Haitian society and in Haitian prison as well. Your Honor, just turning back to the legal error. You've reserved a few minutes for rebuttal. Yes, I have. Okay. So you can address anything then. Thank you, Your Honor. Thank you. Because of the legal and factual error in this case, we would contend that remand is required. Thank you. Ms. Lee? Thank you, Your Honor. May it please the Court, Jenny Lee on behalf of the Respondent, the Attorney General of the United States. I want to pull the mic a little closer to you, thank you. Sure, I'm short. No, no, that's okay. Also, the podium goes down. There's a little switch on the side. You could lower it. All right. There you go. And if you're close to the mic now, I think we'll have no trouble. Thank you. Thank you. May it please the Court, Jenny Lee on behalf of the Respondent, the Attorney General of the United States. Good morning, Your Honors. The Court should deny Mr. Cherie's petition for review because substantial evidence supports the agency's conclusion that he failed to show that a public official has a specific intent to torture him as required under 8 CFR 1208.18A5. The agency did not mischaracterize his claim, which was based on a series of suppositions, concluding with the last supposition being that he would be targeted for torture. That is a specific intent claim. Both the board and the immigration judge at AR-5 and 80, respectively, referred to Pierre, which is a specific intent decision dealing with Haitian prison conditions. Regardless of what petitioner claims, his claim is the quintessential prison claim, which requires specific intent. For example, in matter of JRGP, which is found at 27 INN decision 482, it's a board decision from 2018, a similar claim was made. The applicant asserted that given his mental health issues, he will be arrested and either imprisoned or committed to a mental health facility in Mexico where law enforcement officials or mental health workers will subject him to harm rising to the level of torture. But the board rejected that claim, finding that the applicant failed to show specific intent as required. There was no evidence that Mexican police are targeting mentally incompetent individuals for arrest and incarceration, and then to incarcerate them with the specific intent to torture them. Similarly, none of Mr. Cherie's background evidence shows that the abuse of the mentally ill prisoners is so common that it is more likely than not that he will personally experience it. In fact, the evidence shows the opposite is true. If we look at the administrative record at 370, which is the 2017 Department of State Human Rights Report for Haiti, it certainly acknowledges that the prison conditions are problematic in Haiti, as it was acknowledged in this court's assertion in Pierre and in the board's assertion in matter of JE. But it also points out that the Haitian government is doing things to improve the conditions of the prisons. Under the heading improvements, the Department of Corrections, which is DAP for short, created a strategic development plan in April and started a long-needed organizational restructuring process to better respond to inmate needs. Under the heading independent monitoring, the DAP permitted local human rights NGOs and other organizations to monitor prison conditions. These institutions and organizations investigated allegations of abuse and mistreatment of prisoners, resulting in several times an improvement of their situations. Then under the heading of administration, the country has an independent human rights monitoring body. The Office of Citizen Protector, which maintained a presence in several prison facilities and advocated for the rights and better conditions of prisoners, these are not the actions of a government that has a specific intent to torture its prisoners. Petitioner cites to no specific evidence that there is a torturer who acts with specific intent to cause pain and suffering. There's no evidence that a prison official is intentionally and deliberately creating prison conditions to torture the mentally ill. For these reasons, the record does not compel a contrary conclusion to one that was reached by the agency. Again, for a specific intent, petitioner must show that the Haitian government has a criminal intent, as the court found in Pierre. In here, regardless of, although both Judge Lynch and Judge Raggi asked Petitioner's counsel to point to the evidence, and yet they just danced around in circles repeating the same chain of suppositions over and over. Again, the agency did not mischaracterize their chain because it ends with the claim that he would be targeted, which is a specific intent claim. So for those reasons, respondent rests upon the brief, and if there are no further questions, I thank the court for its time and ask that the petition for review be denied. Ms. Lee, I have a practical question. Are we deporting anybody to Haiti right now? I do not know that, Your Honor. Okay. Thank you, counsel. Thank you. Ms. Javid, you have two minutes for rebuttal. Thank you, Your Honor. I would like to turn back to the legal error in this case. Respondent contends that this case can be resolved on one factual finding, the sole responsive factual finding the agency made, which states that Mr. Sherry did not prove that it was just not more likely than not he would access his medication. However, respondent, again, did not cite any evidence to support the opposite conclusion. The record compels reversal of that specific fact-finding, and because that is the only link that was properly addressed in this chain of events, remand is required. Going back to the legal error again, taking a step back, the agency did seriously mischaracterize Mr. Sherry's claim. The agency's finding states on AR-5, the lack of adequate mental health treatment and harsh prison conditions do not prove a specific intent to torture. The fact that, well, I'm just puzzled by this. The fact that perhaps the agency, in an excess of caution, said, you know, we can construe it this way, and that's not sufficient. But then it goes on to specifically address your chain of what it called suppositions. And then it said that the real problem was there was no evidence that there was any specific intent to torture the mentally ill by the lack of medications, by poor prison conditions, or any other way. And so far I have not heard you identify evidence of instances where people were tortured, subjected to some specific harm intentionally because they were mentally ill. And we've asked it several times, you know, is there something that I'm missing where there is evidence that some individual or many guards or there's a general practice that people in prison who are mentally ill are subjected not just to the same general bad conditions as everybody else, but to some specific kind of mistreatment that constitutes torture? Your Honour, I see I'm out of time, may I proceed to answer your question? Yes, please do. Okay. Your Honour, remand is required here for the agency to call back and consider the totality of the record, which does show that Mr. Sherry would be singled out for torture in Haitian prison. It is under his particular circumstances that the IJ should have analyzed the evidence about how mentally ill are treated in Haiti, how prisoners are treated in Haiti, how someone with Mr. Sherry's specific symptom set and particular history would be treated in Haiti. And that, Your Honour, I don't have an exact cite for because that is a finding that the agency should have made below. And Your Honour, the legal error here, when the agency dismissed the claim stating that a disparate treatment, disparate mental health treatment or an absence of mental health treatment in harsh prison conditions do not equal torture, the lack of treatment was only one step in the clearly delineated chain below. And that lack of treatment would exacerbate his symptoms, making him a target. The record was not properly analyzed below. The sole factual finding that was made here is entirely unsupported by the record. And Your Honour, almost 10 years ago, a prior IJ found that Mr. Sherry warranted humanitarian asylum. That is a relevant, persuasive and corroborating piece of evidence. But I thought you conceded that the humanitarian asylum grant was properly revoked. It was revoked, Your Honour, due to his criminal conviction. Yes. So, I'm not, so what, how does that bear now? It's not binding on this court as we conceded the agency was not bound by law of the case doctrine. However, it was... It's not binding on this court. It's not binding, Your Honour. I'm sorry, I didn't hear you. The prior immigration judge's decision granting Mr. Sherry humanitarian asylum is not explicitly binding on this court. In what way is it not binding? I mean, you think we can decide that he's entitled to humanitarian relief? No, Your Honour. Okay, so in what way is it not binding on our court? In what pertinent way to our decision today is it not binding? Law of the case doctrine does not apply and mandate that this court uphold the prior IJ's findings on that fact. However, those should be considered and given weight. Specifically at AR 558, the prior IJ found that Mr. Sherry would suffer debilitation, homelessness, medical complications, and likely death due to the confluence of his physical and mental health factors in Haiti. And like in 2012 when Mr. Sherry was granted humanitarian asylum, the U.S. has once again designated Haiti as a TPS country, indicating the United States government's recognition of crisis in the country. I'm sorry, that last point is I think perhaps responsive to Judge Radji's question of Ms. Is Mr. Sherry going to benefit from TPS status and at least be temporarily deferred for deportation because nobody's going to get deported to Haiti until things get better there or something? Your Honour, my understanding is at this point, deportations are still proceeding to Haiti. Oh. So that would not bar him from being removed, however that is something that the court should consider. Well, I'm having trouble understanding how we can consider it because I'm not sure I understand what it means. I thought if there was a country where immigrants from there had TPS status, that meant that they would not be deported at least. And it's not the same as the relief you're asking for here, I understand that. But the practical question that was asked is, are people actually being put on planes and sent to Haiti or are they not? And if they are given TPS status, what do you think that means? You said that we should take that into account somehow. I'm trying to understand what it even consists of. I'm merely noting for the court, Your Honour, that in 2012, Mr. Sherry was granted humanitarian asylum. Haiti was a TPS country at that time when that IJ made those findings and Haiti is once again a TPS country now, today, where he is still fighting for protection under the Convention Against Torture. Okay, thank you. Thank you, Your Honour. Thank you, counsel. We'll take the case under advisement.